PD-1554&1555&1556-15

PD-1554&1555&1556-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/30/2015 7:12:10 PM
Accepted 12/1/2015 2:55:35 PM
ABEL ACOSTA
CLERK

NO. PD _____

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

**MICKEY BOSWELL,**
PETITIONER,

VS.

**STATE OF TEXAS,**
RESPONDENT.

PETITION IN CAUSE NOS.
**09-CR-1006-G, 09-CR-1082-G and 10-CR-4228-G**
IN THE 319TH DISTRICT COURT OF NUECES COUNTY, TEXAS,

AND CAUSE NOS.
**13-11-00785-CR, 13-11-00786-CR, 13-11-00791-CR**
IN THE COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

**MICKEY BOSWELL'S
PETITION FOR DISCRETIONARY REVIEW**

Danice L. Obregon
State Bar No. 90001525
802 N. Carancahua, Suite 2100
Corpus Christi, TX 78401
(361) 688-5940
(361) 884-5401 Facsimile
danice@obregonlaw.com

FILED IN
COURT OF CRIMINAL APPEALS

December 1, 2015

ABEL ACOSTA, CLERK

**Attorney for Petitioner**

# IDENTITY OF PARTIES AND COUNSEL

**APPELLANT**
Mickey Boswell

    **APPELLANT'S ATTORNEYS AT TRIAL**
David Stith                 Andrew Palacios
State Bar No. 24008090      State Bar No. 24029760
901 Leopard                  Law Offices of Andrew L. Palacios
Corpus Christi, TX 78401    P.O. Box 804
                                 Portland, TX 78374

    **APPELLANT'S ATTORNEY ON APPEAL**
Danice L. Obregon
State Bar No. 90001525
Obregon Law Firm
802 N. Carancahua, Suite 2100
Corpus Christi, TX 78401

**APPELLEE**
The State of Texas

    **APPELLEE'S ATTORNEYS AT TRIAL & ON APPEAL**
Mark Skurka, District Attorney
State Bar No. 18475570
Leroy L. Persohn, IV, Assistant District Attorney (former)
State Bar No. 00795589
Doug Norman
State Bar No. 15078900
Nueces County District Attorney's Office
901 Leopard, Room 206
Corpus Christi, TX 78401

**TRIAL JUDGE**
Thomas Greenwell (Deceased)
901 Leopard, 8th floor
Corpus Christi, TX 78401

# TABLE OF CONTENTS

**IDENTITY OF PARTIES** ............................................................................. ii

**INDEX OF AUTHORITIES** ..................................................................... v

**STATEMENT REGARDING ORAL ARGUMENT** ............................... vii

**STATEMENT OF THE CASE** ...................................................................vii

**STATEMENT OF PROCEDURAL HISTORY** ...................................... viii

**GROUNDS FOR REVIEW** ....................................................................... xi

**ARGUMENT** ............................................................................................... 1

**I.**     **The Court of Appeals erred when it failed to properly apply Texas law, concluding that a juror's unsworn testimony against Boswell during jury deliberations did not constitute "other evidence" received by the jury mandating a mistrial** ..................... 1

    **A.**     **Texas law on other evidence received by jury** ...................... 1

    **B.**     **The "other evidence" in Boswell's case** ............................... 3

    **C.**     **The Court of Appeals failed to properly apply Texas law** ......... 4

**II.**     **The Court of Appeals erred when it failed to properly apply Texas law and concluded that Boswell waived "any prejudice that may have resulted from the juror's disclosure" by not pursuing juror questioning in lieu of a mistrial** ........................... 6

**III.**     **The Court of Appeals erred when it failed to properly apply Texas law and concluded that Boswell waived an impartial jury because he failed to voir dire on an immaterial fact which ultimately resulted in unforeseeable juror misconduct** ............................... 7

**IV.**     **The Court of Appeals erred in concluding Boswell was not entitled to a 'Mistake of Law' instruction at trial** .......................... 10

iii

**V.**    **The Court of Appeals erred in concluding punishment for registration violations is not punitive** …………………………….. 14

**VI.**   **The Court of Appeals erred in determining Boswell's convictions for both Theft and UUMV in Cause No. 13-11-00785-CR do not violate double jeopardy** ………………………………….. 14

**VII.**  **The Court of Appeals erred in determining Boswell's convictions for three counts of registration violations in Cause No. 09-CR-1006-G do not violate double jeopardy** ……………….……… 15

**PRAYER FOR RELIEF** ……………………………………...……… 15

**CERTIFICATE OF SERVICE** …………………………………...…… 16

**CERTIFICATE OF COMPLIANCE** ……………………………… 17

**EXHIBIT - JURY NOTE**

**APPENDIX – September 24, 2015, Court of Appeals Opinions**

# INDEX OF AUTHORITIES

**<u>Cases</u>**

*Alexander v. State*, 610 S.W.2d 750, 751 (Tex. Crim. App. 1980) …………… 2, 3

*Brown v. State*, 955 S.W.2d 276 (Tex. Crim. App. 1997) ………………….. 13

*Bustamante v. State*, 106 S.W.3d 738 (Tex. Crim. App. 2003) ………………… 2, 5

*Garza v. State*, 630 S.W.2d 272 (Tex. Crim. App. [Panel Op.] 1981 …………….. 2

*Granger v. State,* 3 S.W.3d 36 (Tex. Crim. App. 1999) …………………….. 10, 13

*Hawkins v. State*, 135 S.W.3d 72 (Tex. Crim. App. 2004) (en banc) ……………. 10

*Ex parte Jefferson*, 681 S.W.2d 33 (Tex. Crim. App. 1984) …………………… 14

*Juarez v. State*, 308 S.W.3d 398 (Tex. Crim. App. 2010) ………………….. 12

*Langs v. State*, 183 S.W.3d 680 (Tex. Crim. App. 2006) ……………………. 15

*Ocon v. State*, 284 S.W.3d 880 (Tex. Crim. App. 2009) ………………….. 6, 7

*Riddle v. State*, 888 S.W.2d 1 (Tex. Crim. App. 1994) …………………….. 11

*Shaw v. State*, 243 S.W.3d 647 (Tex. Crim. App. 2007) …………………… 13

*Stephenson v. State*, 571 S.W.2d 174 (Tex. Crim. App. 1978) ………………… 2, 3

*Von January v. State,* 576 S.W.2d 43 (Tex. Crim. App. 1978) …………….…… 8

*Woodfox v. State*, 742 S.W.2d 408 (Tex. Crim. App. 1987) ……………………. 11

*Wyle v. State*, 777 S.W.2d 709 (Tex. Crim. App. 1989) ………………………. 8

*Young v. State,* 341 S.W.3d 417 (Tex. Crim. App. 2011) …………………….. 15

## **Statutes**

TEX. PENAL CODE §8.03 …………………………………………………… 10

**STATEMENT REGARDING ORAL ARGUMENT**

Boswell has raised important issues decided by the Court of Appeals in conflict with the applicable decisions of the Court of Criminal Appeals. Additionally, the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings and sanctioned such a departure by the trial court, that this Court's power of supervision is necessary. Therefore, oral argument would assist the Court in determining the scope of its discretionary review in this case.

**STATEMENT OF THE CASE**

Boswell is seeking discretionary review in three separate cases. In early 2010, he pleaded guilty in two cases and received deferred adjudication community supervision in each. Later in 2010, Boswell was indicted for failure to register as a sex offender in Nueces County and that new offense became an allegation in motions to revoke in the two previous cases. The trial court carried the motions to revoke along with the jury trial in the 2010 registration case. Ultimately, the jury convicted him of the new offense and the trial court found that Boswell had violated the terms of his community supervision. He was sentenced by the court on all three cases on September 28, 2011. The Court of Appeals considered all three appeals in a consolidated opinion.

**STATEMENT OF PROCEDURAL HISTORY**

<u>2009 Failure to Comply with Registration Requirements, 3 counts - MTR</u>
Trial Court: 09-CR-1006-G
Appellate Court: 13-11-791-CR

In cause number 09-CR-1006-G, Boswell pleaded guilty to three counts of Failure to Register as a Sex Offender pursuant to a plea bargain agreement. 2 Supp. RR 3:7-9.[1] These counts were each third degree felonies, enhanced to second degree punishment with a 2004 Tarrant County conviction for violating the registration statute. CR-791:6-8;[2] RR 4:74; Tex. Code Crim. Pro. art. 62.055, 62.102. He was placed on deferred adjudication probation on February 5, 2010, to run concurrently with the second 2009 case (Theft and Unauthorized Use of a Motor Vehicle). CR-791:159. A motion to revoke was filed on December 16, 2010, alleging four violations: failure to report in October, 2010 (pleaded not true); failure to pay (pleaded true to arrears of $180 court costs and $480 fees); failure to complete community service (pleaded not true) and committing a new offense (pleaded not true). CR-791:166; RR 2:9-10. The motion to revoke was carried with the jury trial on the new 2010 offense in September, 2011. RR 2:5-8. On September 28, 2011, the Court found Boswell had violated the terms and

_____

[1] Two supplemental Reporter's Records were filed in this case, but not numbered sequentially. This reference is to the second supplement Reporter's Record, which was filed on 5/13/14.

[2] There are also Clerk's Records filed in each case, so this Petition refers to them by their appellate cause number; for example, the Clerk's Record in Cause No. 13-11-791-CR is CR-791).

conditions of the community supervision, adjudicated him and sentenced him to twenty years on each of the three counts in this case. CR-791:193. The sentences were to run concurrently with each other and the other two cases. *Id.*

<u>2009 Theft/Unauthorized Use of Motor Vehicle</u>
Trial Court: 09-CR-1082-G
Appellate Court: 13-11-785-CR

In cause number 09-CR-1082-G, Boswell pleaded guilty to felony Theft (count 1) and Unauthorized Use of a Motor Vehicle (count 2) pursuant to a plea bargain agreement. 2 Supp. RR 3:13-18. The theft charge was a third degree felony because it involved a boat valued at $42,000. CR-785:5, 98; TEX. PENAL CODE 31.03(e)(5). The theft was also enhanced by two prior felony convictions; therefore, Boswell faced punishment as a habitual felony offender. CR-785:5; TEX. PENAL CODE §12.42.(d) The unauthorized use of a motor vehicle charge, a state jail felony, was also enhanced by the two prior felony convictions, raising the punishment range to a second degree felony. CR-785:5; TEX. PENAL CODE 12.425(b). He was placed on ten years deferred adjudication probation on February 5, 2010, concurrent with the 2009 Registration case. CR-785:143.

A motion to revoke was filed on December 10, 2010, alleging three violations: failure to report in October, 2010 (pleaded not true); failure to pay restitution (pleaded true to being in arrears $180); and committing a new offense (pleaded not true). CR-785:158-60; RR 2:7-8. The motion to revoke was carried with the jury trial on the new offense in September, 2011. RR 2:5-8. On

September 28, 2011, the Court found Boswell had violated the terms and conditions of the community supervision, adjudicated him and sentenced him to fifty years on the theft count and twenty years on the UUMV count. CR-785:210; RR 4:76-78. The sentences were to run concurrently with each other and the other two cases. CR-785: 210; RR4: 79.

2010 Failure to Comply with Registration Requirements
Trial Court: 10-CR-4228-G
Appellate Court: 13-11-786-CR

On December 16, 2010, the State indicted Boswell for failing to verify his address within 90 days of the prior registration. CR-786: 5. This second degree charge was enhanced with a 2004 Tarrant County conviction, resulting in a first degree punishment range. *Id.* The jury trial took place on September 26 and 27, 2011. CR-786: 124-25. The jury convicted Boswell on September 27 and the Court sentenced him on all three cases on September 28, 2011.[3] CR-786: 125. The sentence in this 2010 failure to register case was 20 years, to run concurrently with the other sentences. CR-786: 100, 125.

A motion for new trial was filed and denied. CR-786: 103, 111, 125. Notice of appeal was filed on December 8, 2011. CR-786: 113. Boswell appealed the three convictions and on September 24, 2015, the 13th Court of Appeals affirmed

---

[3] The Court heard all three cases simultaneously. RR2: 5 (calls all three cases and says "Well, let me go through and do those and we'll carry the not true portions along with the trial testimony, then."); RR3: 156 ("Okay. Then we'll go back on the record in Cause 10-CR-4228, for the punishment phase, and then also we're hearing simultaneously evidence in the two motions to revoke in Cause 09-CR-1006, and 09-CR-1082.").

his convictions in a consolidated opinion, attached to this Petition in the appendix. One of the three justices on the panel dissented and the dissenting opinion is also attached in the appendix. Boswell's consolidated Motion for Rehearing was denied on October 27, 2015. Boswell seeks discretionary review of all three convictions in this consolidated petition.

## GROUNDS FOR REVIEW

I.     The Court of Appeals erred when it failed to properly apply Texas law, concluding that a juror's unsworn testimony against Boswell during jury deliberations did not constitute "other evidence" received by the jury mandating a mistrial.

II.     The Court of Appeals erred when it failed to properly apply Texas law and concluded that Boswell waived "any prejudice that may have resulted from the juror's disclosure" by not pursuing juror questioning in lieu of a mistrial.

III.     The Court of Appeals erred when it failed to properly apply Texas law and concluded that Boswell waived an impartial jury because he failed to voir dire on an immaterial fact which ultimately resulted in unforeseeable juror misconduct.

IV.     The Court of Appeals erred in concluding Boswell was not entitled to a 'Mistake of Law' instruction at trial.

V.     The Court of Appeals erred in concluding punishment for registration violations is not punitive.

VI.     The Court of Appeals erred in determining Boswell's convictions for both Theft and UUMV in Cause No. 13-11-00785-CR do not violate double jeopardy.

VII.     The Court of Appeals erred in determining Boswell's convictions for three counts of registration violations in Cause No. 09-CR-1006-G do not violate double jeopardy.

**ARGUMENT**

**I.      The Court of Appeals erred when it failed to properly apply Texas law, concluding that a juror's unsworn testimony against Boswell during jury deliberations did not constitute "other evidence" received by the jury mandating a mistrial.**

After hearing evidence regarding Boswell's alleged failure to comply with registration requirements, the jury retired to deliberate at 2:40 p.m. on September 28, 2011.  CR-786: 125.  During 40 minutes of deliberations, the jury sent out four notes.  RR3: 151-53; CR-786 (6/4/13): 3-6.  The second note reveals that one of the sworn jurors became an unsworn witness against Boswell after the close of the evidence.  The note read as follows:

> One jury member owns property that Mr. Boswell gave as his address. It is a commercial property.  This jury says it represents dishonesty on Mr. Boswell's part.  Are we to allow or dismiss this comment?

CR-786 (6/4/13): 4[1].   The Court's response was:

> Do not consider anything not in evidence.   Refer to paragraph 10, subpart 4.

CR-786 (6/4/13): 4.

Boswell moved for a mistrial and the court denied the motion.  RR3: 151-52.

A guilty verdict was returned at 3:20 p.m.  CR-786: 125.

A.      Texas law on other evidence received by jury.

---

[1] The Reporter's Record indicates the note said, "This juror says it represents dishonesty on Mr. Boswell's part." However, the handwritten note in Clerk's record clearly says "jury" instead of "juror."  A copy of the note is contained in a supplemental Clerk's Record filed on June 4, 2013, and is attached to this Petition for the Court's convenience.

This Court has described the analysis to be undertaken in the face of a jury exposed to new or "other" evidence. *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003). In deciding whether a new trial or mistrial is warranted, courts look to whether evidence was *received* and whether the evidence is *adverse*. *Id*. A court's decision about whether the jury *received* new evidence can be made by evaluating how extensively the evidence was considered by the jury and whether the jury was given an instruction to disregard. *Id*. For example, a passing remark followed by a proper instruction can justify a finding that evidence was not received. *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex. Crim. App. 1978). The adverse nature of the testimony should be evaluated in terms of "its character in light of the issue before the jury rather than its actual effect." *Slip op*. at 6 (citing, *Garza v. State*, 630 S.W.2d 272, 274 (Tex. Crim. App. [Panel Op.] 1981).

Cases decided by this Court have addressed situations similar to Boswell's. First, in *Alexander v. State*, 610 S.W.2d 750, 751 (Tex. Crim. App. 1980), a juror claimed to know the defendant personally and told the other jurors that if he were called as a character witness, he would say that the defendant's character was bad. This Court stated:

> The jury received from a fellow juror other testimony, not under oath, on a disputed issue before the jury at the penalty stage of the trial which was damaging to the Appellant. How can we say that there was harmless error beyond a reasonable doubt? We can't.

*Id*.  In another case, jurors knew two defense witnesses personally and expressed that they did not have good reputations for truthfulness, and one juror expressed personal knowledge that the defendant was guilty.  *Stephenson*, 571 S.W.2d at 175. This Court recognized the adverse character of the evidence received by the jury and granted a new trial.  *Id*.

B.     The "other evidence" in Boswell's case.

The sworn testimony regarding Boswell's addresses came through Brenda Moreno, a Corpus Christi Police Department employee who monitored sex offender registrants.  She testified Boswell reported three different Corpus Christi addresses during the relevant time period: 210 Alameda, 715 Carancahua, Apartment A, and 118 North Staples.  RR3: 61-62, 72.  The case against Boswell did not concern a particular address, though; this testimony was simply background information.[2]  Boswell was indicted for failing to verify his address within 90 days, not failing to report a change in address.  His defense was that he understood his duty to be an annual verification, not a quarterly verification;

---

[2] Boswell clarified the addresses during the punishment phase.  His probation officer testified that she confirmed his home addresses by conducting home visits. Specifically,  in April, 2010, Boswell lived at 210 Alameda - the Good Samaritan Shelter; in May, 2010, he lived at 118 North Staples in the "back part" of a paint and body shop; and in June, 2010, he lived at 715 Carancahua, Apartment A. RR3: 174.

therefore, the trial focused on whether he had received conflicting interpretations of the duty.

However, the jury note at issue reveals that upon hearing one of those addresses, a juror recognized it as a property he allegedly owned. Rather than alert the Court when he heard the familiar address during the testimony, the juror kept the knowledge to himself, in violation of the jury instructions. *See*, RR2: 224. He also chose to hide his personal knowledge throughout the reading of the Court's final charge, which contained the specific instruction not to consider such matters. RR3: 131; CR-786: 90. He waited until deliberations and then shared the information with the entire jury, rather than the judge, also in violation of the very instructions he had just been given. *Id.* Then, in violation of the jury instructions, the jury as a whole discussed the unsworn "testimony" and concluded that it revealed "dishonesty" on the part of Boswell ("This jury says it represents dishonesty…"). The jury then sought permission from the Court to consider the "comment" through the second note.

C.     The Court of Appeals failed to properly apply Texas law

The Court of Appeals concluded:

> The jury timely sought guidance from the trial court concerning the juror's disclosure, and they were provided a proper instruction to disregard the information with a reference to the appropriate section of the jury charge.

*Slip op*. at 6. Without any analysis, the Court of Appeals opines the jury received no adverse evidence. *Id*. Thus, the Court of Appeals failed to apply Texas precedent and evaluate (1) how extensively the evidence was considered (received) and (2) the character of the evidence (adverse).

Moreover, the Court of Appeals also decided the Court's responsive instruction cured any possible prejudice without any analysis. Although the trial Court administered an instruction to follow the same instructions it had given less than one hour before, such an effort could not undo the damage that had been done. *See*, CR-786: 125 (Court's docket sheet notes jury began deliberating at 2:40 p.m. and reached a verdict at 3:20 p.m.). First, the juror responsible had already disregarded the instructions on several levels. Second, the jury as a whole disregarded the instructions by discussing the evidence to the extent they did in order to formulate the note sent to the Court. Finally, the Court's instruction simply urged them to consider the "evidence." It is entirely possible the jury considered its member's testimony to be such evidence. The instruction alone is insufficient to remedy the newly-obtained knowledge the jury had obtained without the benefit of oaths and cross-examination.

The dissenting justice did address the issues identified by this Court in *Bustamante*. Specifically, the dissent said:

> The jury note in this case showed plainly that the jury had considered the new evidence and made a determination regarding Boswell's truthfulness. Boswell did not testify during the trial. In essence, the

5

juror who purportedly owned the address of the property Boswell reportedly used became an unsworn witness against him. In doing so, this juror made a direct comment on Boswell's credibility without Boswell having the right to confront this witness. The plain language of the note further confirms that this "new evidence" adversely affected Boswell's credibility before the entire jury because the note states that it found Boswell dishonest.

*Dissenting op.*, at 4-5. In Boswell's case, the note itself proves the jury received adverse evidence and considered it far more extensively than they should have. The Court of Appeals' failure to evaluate the evidence is error.

**II.     The Court of Appeals erred when it failed to properly apply Texas law and concluded that Boswell waived "any prejudice that may have resulted from the juror's disclosure" by not pursuing juror questioning in lieu of a mistrial.**

The Court of Appeals correctly stated that a mistrial is only appropriate in extreme circumstances when prejudice is incurable, or when "residual prejudice remains" after less drastic alternatives are explored. *Slip op.* at 5 (citing, *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). However, the Court failed to consider that Boswell's case is one of extreme circumstances where no less drastic alternative exists, including questioning of jurors. Instead, the Court of Appeals applied *Ocon* literally, thereby finding Boswell's failure to initiate questioning constituted a waiver of any error.

*Ocon* is a case about outside communication with a juror, as prohibited by article 36.22 of the Code of Criminal Procedure. Questioning should prove helpful

6

when the prejudice is not apparent and needs to be determined, as in *Ocon*. Rather than apply *Ocon* with no further analysis, the Court of Appeals should have analyzed the facts of Boswell's case and the futility of any questioning.

The dissenting justice wrote, "It seems highly unlikely that the taint would have been dissipated even if the jury had been individually questioned." *Dissenting op*. at 6. Further, the dissent notes that the trial court's responsive instruction to the jury was the lesser remedy, although it was insufficient:

> As a result, the trial court's only option at this point would have been to declare a mistrial. Boswell did not have the opportunity to confront the unsworn juror witness and did not have a fair and impartial jury deliberating his guilt or innocence because this juror injected new and unverified evidence that adversely affected Boswell's case. This is clearly uncurable prejudice, and as a result, I would hold that the trial court abused its discretion in this case and no lesser remedy could have cured the taint.

*Dissenting op*. at 6. Unfortunately, Boswell's case is the "extreme circumstance" in which "residual prejudice" exists and the Court of Appeals erred in holding Boswell waived the error.

**III.    The Court of Appeals erred when it failed to properly apply Texas law and concluded that Boswell waived an impartial jury because he failed to voir dire on an immaterial fact which ultimately resulted in unforeseeable juror misconduct.**

This Court has held the right to an impartial jury includes not having witnesses serve on the jury. *See, Von January v. State,* 576 S.W.2d 43, 46 (Tex. Crim. App. 1978) (defendant entitled to new trial where learned during trial that a juror knew victim's family). A "witness," as the term is used in Art. 35.16(a)(6) includes one who has personal knowledge of facts of the case, even if that person is not intended to testify. *Wyle v. State*, 777 S.W.2d 709, 712 (Tex. Crim. App. 1989) (case reversed because trial court abused discretion in denying challenge for cause of potential juror that had personal knowledge as funeral director who had been present at crime scene).

The Court of Appeals improperly applied the law by focusing on Boswell's duty to have discovered the juror's bias during voir dire and resulting waiver of an impartial jury by failing to do so. *Slip op.* at 8. This case is an example of a collateral, non-material fact giving rise to a juror's material bias and subsequent misconduct. The issue in the case was not *where* Boswell was living, or a particular address. The issue was whether he intentionally or knowingly violated the 90 day verification requirement. The address that became an issue for the juror was an incidental background fact - a *prior* address. The juror's alleged knowledge of the address - that it was commercial, not residential - gave rise to an opinion about Boswell's credibility. Boswell could not have anticipated that a juror would have personal, adverse knowledge about a prior address not at issue in the case.

Moreover, Boswell could not have anticipated the misconduct of the juror in this case, which occurred during the trial and deliberations, unlike the cases where jurors withheld information during voir dire. In fact, the juror's misconduct in this case is extreme. The record reveals the juror's failure to reveal the connection to Boswell's former address was willful. The initial instructions, as well as the Court's charge which was read to the jury just prior to the beginning of deliberations at 2:40 p.m., clearly prohibited the juror's actions. The juror acted anyway. Such disregard for the Court's admonitions indicate this juror may not have truthfully responded to a question about Boswell's prior address even if counsel had thought it was a material fact. The juror's conduct indicates a clear bias against Boswell. If the juror had revealed the connection to the Court in accordance with the Court's instructions, error may have been avoided.

Application of the voir dire duty described by the Court of Appeals would place an impossible burden on defendants and trial courts alike. Every fact that might be presented as background in a case would have to be addressed with the jury venire. In fact, the only way to have effectively discovered the juror's bias would have been to review the anticipated testimony of the witnesses and ask the venire if they have any knowledge or opinions about the testimony. Rather than impose this extreme and time-consuming burden on the defense or risk waiving the constitutional right to an impartial jury, the Court should recognize Boswell's case as an extreme circumstance justifying a mistrial, in accordance with Texas law and

the dissenting opinion in this case.  *Dissenting op*., at 3; *Hawkins v. State*, 135 S.W. 3d 72, 77 (Tex. Crim. App. 2004) (en banc).

Boswell was denied an impartial jury because there was an actual adverse fact witness on his jury.  The juror did not privately inform the trial court of the connection to the case; instead, he informed the entire jury as evidenced by the note.  This direct comment on Boswell's credibility by a juror undermined his entire defense.  The juror's misconduct is an extreme circumstance that could not have been anticipated by Boswell.

## IV.   The Court of Appeals erred in concluding Boswell was not entitled to a 'Mistake of Law' instruction at trial.

The Penal Code provides:

It is an affirmative defense to prosecution that the actor reasonably believed the conduct charged did not constitute a crime and that he acted in reasonable reliance upon:

(1)   an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

(2)   a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

TEX. PENAL CODE §8.03.

The jury is charged with deciding whether a defendant's mistaken belief is reasonable, not the trial or appellate court.  *Granger v. State,* 3 S.W.3d 36, 37 (Tex. Crim. App. 1999).

In determining whether any defensive charge should be given, the credibility of evidence or whether it is controverted or conflicts with other evidence in the case may not be considered. When a defensive theory is raised by evidence from any source and a charge is properly requested, it must be submitted to the jury. This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. When a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury. The weight of the evidence in support of an instruction is immaterial.

*Woodfox v. State*, 742 S.W.2d 408, 409–10 (Tex. Crim. App. 1987) (internal citations omitted).

The Court of Appeals misconstrued *Riddle v. State*, 888 S.W.2d 1, 6 (Tex. Crim. App. 1994). The Court cited it for the proposition that a defendant must produce "sufficient" evidence to raise a defensive issue. *Slip op.* at 13. However, this Court actually said, "if the evidence raises the issue of self-defense, the accused is entitled to have it submitted to the jury." Riddle had beaten a man 15 times with a tire iron after an unwanted sexual advance. This Court agreed with the trial court that such evidence does not raise the issue of self-defense. In contrast, Boswell was entitled to the instruction under this standard. The evidence in his case did show multiple interpretations that conflicted with the Corpus Christi Police Department interpretation.

The Court of Appeals also mentioned that Boswell's failure to testify means "there is no evidence in the record concerning whether he relied upon prior agency representations." *Slip op*. at 13. However, State's Exhibit two contains documentation that Boswell was instructed at least 17 times to verify annually and only four times to verify quarterly. Additionally, direct testimony from the CCPD employee proved Boswell disagreed with her interpretation of the law. This Court has held it is of no consequence "whether such evidence or testimony was produced by the prosecution or the accused, or whether such defensive evidence or testimony might be strong, weak, unimpeached, or contradicted." *Juarez v. State*, 308 S.W.3d 398, 405 (Tex. Crim. App. 2010). Because of the evidence of conflict in official understandings of the law passed on to Boswell, there is sufficient support for the instruction.

The Court of Appeals acknowledged Boswell's receipt of interpretations that he was an annual registrant rather than a quarterly registrant. *Slip op*. at 13. The Court then dismissed that evidence in the face of the State's evidence that another interpretation had been given closer to the time of the offense date. This Court has addressed such analysis before:

> But the use of those factual details to bolster a court's conclusion that an accused's belief is unreasonable as a matter of law does exactly what the law forbids—it effectively substitutes the court's judgment on the weight of the evidence for that of the jury.

*Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999) (internal citations omitted). The Court of Appeals' conclusion that, "appellant failed to produce sufficient evidence that he reasonable believed the conduct charged did not constitute a crime" substituted its own judgment for that of the jury. *Slip op.* at 13.

An affirmative defense instruction should be given on every issue raised by the evidence regardless of the strength of the evidence. *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). "A defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007). Boswell's entire defense was centered on his reliance upon the annual representations he had received from other agencies and the Court of Appeals erred in holding he was not entitled to his requested instruction on his mistake of law.

**V. The Court of Appeals erred in concluding punishment for registration violations is not punitive.**

Boswell moved to dismiss the charges based on the registration statute's violation of the ex post facto clause. CR-786: 61; Supp. RR (8/15/13)1: 15. Specifically, the changes that require Boswell to verify his information quarterly rather than annually occurred after his conviction and imposed new duties. Because the requirements are the equivalent of imposing a new criminal sanction, or punishment, on the defendant's prior crime, the retroactive application of the law is not proper. In fact, the registration requirements are similar to probation, which is definitely a criminal sanction. Boswell's failure to properly follow the conditions resulted in a prison term of twenty years, which is also a criminal sanction. The Court of Appeals erred in finding the retroactive application of those changes is not punitive.

**VI. The Court of Appeals erred in determining Boswell's convictions for both Theft and UUMV in Cause No. 13-11-00785-CR do not violate double jeopardy.**

This Court has held that because unauthorized use of a motor vehicle is a lesser-included offense of theft, a defendant cannot be convicted of both crimes for the same conduct. *Ex parte Jefferson*, 681 S.W.2d 33, 34 (Tex. Crim. App. 1984). Boswell has been sentenced for the same act - taking a boat without permission and later abandoning it - in both the Theft and the UUMV counts of this

indictment. CR-785: 5-6, 79-94. The undisputed facts of the case show the double jeopardy violation on the face of the record. *See*, *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).

**VII. The Court of Appeals erred in determining Boswell's convictions for three counts of registration violations in Cause No. 09-CR-1006-G do not violate double jeopardy.**

Article 62.055 of the Code of Criminal Procedure requires a registrant to inform his primary registration authority before he moves if he intends to change his address, or to notify the authority within seven days after a change of address. The Court of Criminal Appeals has held that the failure to report a change of address constitutes *one crime per move. Young v. State,* 341 S.W.3d 417, 425 (Tex. Crim. App. 2011). Boswell was charged with and convicted of three counts reflecting two changes. CR-791: 6-8, 81, 95-104. Therefore, the record clearly reflects a double jeopardy violation.

The Court of Appeals ignored the case law on this issue, focusing instead on the existence of separate statutory obligations which justify multiple punishments. The undisputed facts of the case show the double jeopardy violation on the face of the record. *See*, *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).

**PRAYER FOR RELIEF**

For the foregoing reasons, the Petitioner requests that this Court grant review and after full briefing on the merits, reverse and remand for a new trial in

15

all three cases based upon the error resulting from the jury note and the error in denying Boswell a jury instruction on the affirmative defense of mistake of law.

In the alternative, Boswell requests this Court find the registration requirements violate the Ex Post Facto prohibition, reverse his convictions and render an acquittal in Cause Nos. 13-11-00786-CR and 13-11-00791-CR. Finally, Boswell requests a finding of double jeopardy violations in Cause Nos. 13-11-00791-CR and 13-11-00785-CR and a remand for modification of the judgments accordingly.

Respectfully submitted,

/s/ *Danice L. Obregon*
Danice L. Obregon
State Bar No. 90001525
802 N. Carancahua, Suite 2100
Corpus Christi, TX 78401
(361) 884-5400
(361) 884-5401 Facsimile

**Attorney for Petitioner**

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), a copy of this Petition for Discretionary Review was delivered to the offices of the District Attorney for Nueces County and the State Prosecuting Attorney by email delivery on this the 30th day of November, 2015.

/s/ *Danice L. Obregon*
Danice L. Obregon

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Texas Rule of Appellate Procedure 9.4. The computer-generated word count for the relevant portions of this document is 3,860 words.

/s/ *Danice L. Obregon*
Danice L. Obregon, Attorney

# NUMBERS 13-11-00785-CR; 13-11-00786-CR; & 13-11-00791-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**MICKEY BOSWELL, Appellant,**
**v.**
**THE STATE OF TEXAS, Appellee.**

**On appeal from the 319th District Court**
**of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Longoria**
**Memorandum Opinion by Justice Perkes**

Appellant Mickey Boswell appeals his convictions in three separate causes. In cause number 13-11-00786-CR, a jury convicted appellant for failing to register as a sex offender, enhanced to a first degree felony, and the trial court sentenced appellant to twenty years' imprisonment. On the basis of his indictment in that cause, the State

1

moved to revoke community supervision in: (1) cause number 13-11-00791-CR, involving three counts of failure to register as a sex offender, enhanced to second degree felonies; and (2) cause number 13-11-00785-CR, involving charges of theft and unauthorized use of a motor vehicle, enhanced to first and second degree felonies, respectively.[1] The trial court found the alleged violations to be true, adjudicated appellant guilty, and sentenced him to fifty years' imprisonment for theft, twenty years for the unauthorized use of a mother vehicle, and twenty years for each failure to register count. The trial court ordered all sentences to run concurrently.

By seven issues,[2] appellant argues: (1) the receipt of other evidence by the jury warranted mistrial; (2) the trial court committed reversible jury charge error; (3) application of the quarterly registration statute constituted an ex post facto violation; (4) the theft conviction was not supported by evidence; (5) his convictions for theft and unauthorized use of a motor vehicle constituted double jeopardy; (6) his sentence for the theft conviction was improperly enhanced; and (7) his convictions for three counts of violating the registration requirements were improper. We affirm.

---

[1] Appellate Cause No. 13-11-00785-CR is the appeal from trial cause number 09-CR-1082-G. Appellate Cause No. 13-11-00786-CR is the appeal from trial cause number 10-CR-4228-G. Appellate Cause No. 13-11-00791-CR is the appeal from trial cause number 09-CR-1006-G. The State's motions to revoke were carried with the case in trial cause number 10-CR-4228-G. Our analysis allows us to consider them in a consolidated opinion.

[2] The State asserts that many issues presented by appellant are multifarious. We agree. A multifarious issue "is one that embraces more than one specific ground." *Stults v. State*, 23 S.W. 3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). "By combining more than one contention in a single point of error, an appellant risks denial on the ground that the issue is multifarious and presents nothing for review." *Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App. —San Antonio 2011, pet. ref'd). We have discretion to "refuse to review a multifarious issue or we may elect to consider the issue if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made." *Gilley v. State*, 418 S.W.3d 114, 119 n. 19 (Tex. Crim. App. 2014) (quoting *Prihoda*, 352 S.W.3d at 801). To the extent we can discern an issue in the brief, we will address the issue in the interest of justice.

## I. BACKGROUND

In 1994, appellant was convicted of two counts of indecency with a child by contact, second degree felonies. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West, Westlaw through Chapter 46 2015 R.S.). As a result of his conviction, appellant was required to register as a sex offender. In 2004, appellant was convicted for failure to comply with sex offender registration requirements and was sentenced to two years' imprisonment.

In 2009, appellant was indicted for three counts of violating the sex offender registration requirements. *See* TEX. CODE CRIM. PROC. ANN. art. 62.055, 62.057 (West, Westlaw through Chapter 46 2015 R.S.). That same year, appellant was also indicted for felony theft and unauthorized use of a motor vehicle. *See* TEX. PENAL CODE ANN. §§ 31.03, 31.07. In each of the 2009 causes, appellant pleaded guilty pursuant to a plea bargain agreement, and waived his right to appeal. The trial court deferred adjudication in those cases and placed appellant on community supervision for concurrent periods of ten years. The "Conditions of Community Supervision" provided that appellant must commit no offense against the laws of this state, and required appellant to comply with all sex offender registration requirements. Appellant was also required to serve 360 days in the Nueces County Jail.

On March 22, 2010, upon his release from jail, appellant was notified by way of a "Pre-Release Notification Form" that he was required to register annually as a sex offender. When appellant registered with the Corpus Christi Police Department's ("CCPD") Sex Offender Registration Division on March 29, 2010, a CCPD employee informed appellant that he was required to register every ninety days or "quarterly."

Appellant reported in person to CCPD on April 29 and June 22 because he did not have a driver's license to confirm his residence. On each occasion he reported to CCPD, appellant signed a sex offender verification form stating he was required to register every ninety days. Appellant was arrested on October 30 because he had not registered within ninety days of June 22, 2010.

Appellant was indicted in cause number 10-CR-4228-G for failing to register within ninety days, *see* TEX. CODE CRIM. PROC. ANN. art. 62.058, and the State filed motions to revoke community supervision in trial cause numbers 09-CR-1006-G and 09-CR-1082-G, which were carried with the case. Following a jury trial, the jury returned a guilty verdict. The trial court further found that appellant violated the terms of his community supervision. This appeal followed.

## II. JURY DELIBERATIONS

### A. Receipt of Other Evidence

By his first issue, appellant argues "the trial court erred in denying [his] motion for mistrial during the jury's deliberations [in cause 10-CR-4228-G] after discovering a juror became an unsworn witness against [appellant]." Specifically, appellant maintains that the jury received "other evidence" detrimental to appellant during deliberations and that he was deprived of his right to an impartial jury.

#### 1. Pertinent Facts

The jury heard evidence regarding three separate addresses that appellant reported as his residence. After retiring to deliberate, the jury sent four notes to the trial judge. The second note read as follows:

One jury member owns property that [appellant] gave as his address. It is a commercial property. This jury says it represents dishonesty on [appellant's] part. Are we to allow or dismiss this comment?

Appellant moved for a mistrial. The trial court denied the motion, but directed the jury in writing "Do not consider anything not in evidence. Refer to paragraph 10, subpart 4 [of the jury charge]." The referenced portion of the jury charge reads: "During deliberations, the jury may not . . . consider or discuss matters not in evidence including personal knowledge or information about any fact or person connected with the case." Appellant argues the jury note establishes that new evidence was received by the jury and that no instruction could cure the error.

**2. Standard of Review and Applicable Law**

A mistrial is required only in extreme circumstances where the prejudice is incurable. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Prejudice is incurable when it "is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). We review the trial court's denial of a motion for mistrial for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling, and considering only those arguments before the court at the time of the ruling. *Id.* We must uphold the ruling if it was within the zone of reasonable disagreement. *Ocon*, 284 S.W.3d at 884.

A mistrial is an extreme remedy, and should be granted "only when residual prejudice remains" after less drastic alternatives are explored. *Id.* (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex.

Crim. App. 2006)). Less drastic alternatives include questioning the jury about the extent of any prejudice if instructions alone do not sufficiently cure the problem. *Id.* at 885. If the movant for mistrial does not first request a lesser remedy, we will not reverse the trial court's judgment if the problem could have been cured by the less drastic alternative. *Id.*

"A defendant is entitled to a mistrial if the jury, after retiring to deliberate, receives other evidence adverse to the defendant." *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003).[3] "In determining whether the evidence was 'received' by the jury, a court may consider how extensively the evidence was considered by the jury and whether the jury was given an instruction to disregard." *Id.* If the trial court gives an instruction to disregard that is found to be effective, "it is as though the evidence was never 'received' by the jury." *Id.* To determine whether evidence was detrimental or adverse, we consider its character in light of the issue before the jury rather than its actual effect. *Garza v. State,* 630 S.W.2d 272, 274 (Tex. Crim. App. [Panel Op.] 1981); *Reed v. State*, 841 S.W.2d 55, 59 (Tex. App.—El Paso 1992, pet. denied).

**3. Analysis**

The jury timely sought guidance from the trial court concerning the juror's disclosure, and they were provided a proper instruction to disregard the information with a reference to the appropriate section of the jury charge. There is no evidence in the record indicating that the jury was unable to follow the trial court's instruction. Under

---

[3] In *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003), the court of criminal appeals applied Texas Rule of Appellate Procedure 21.3(f) and interpretive case law in its review of a motion for mistrial. Rule 21.3(f) requires that a new trial be granted "when, after retiring to deliberate, the jury has received other evidence." TEX. R. APP. P. 21.3(f).

these facts, we conclude that the trial court's curative instruction was an effective alternative to the extreme remedy of a mistrial. Therefore, it is as though the evidence was never "received" by the jury. *See Bustamante*, 106 S.W.3d at 745 (holding that exhibit improperly submitted to the jury was not "received" by the jury where jurors recognized a potential problem, sought guidance from the trial court, and received an instruction to disregard the exhibit); *Cuellar v. State*, 943 S.W.2d 487, 492 (Tex. App.—Corpus Christi 1996, pet. denied) (concluding "other evidence" of the defendant's gang affiliation was not received by the jury due to corrective instruction by another juror that information should not be considered).

Further, appellant's counsel did not pursue the alternative of questioning the jury. The party alleging juror misconduct should initiate juror questioning. *Ocon*, 284 S.W.3d at 886-87. "Questioning jurors who allegedly participated in misconduct is a less drastic remedy than a mistrial." *Id.* at 886. Because a less drastic remedy was available to cure any prejudice that may have resulted from the juror's disclosure, we will not reverse the judgment of the trial court.

The trial court did not abuse its discretion in overruling appellant's motion for mistrial on the basis of the jury's receipt of other evidence.

**B. Impartial Jury**

Appellant further argues under his first issue that the juror's personal knowledge regarding appellant's residence deprived appellant of his right to an impartial jury. We disagree.

7

**1. Applicable Law**

An accused in a criminal prosecution has the right to a fair trial by an impartial jury. *See* TEX. CONST. art. I, § 10. When a juror "'withholds material information during the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury.'" *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004) (quoting *Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. 1978)). To obtain a new trial based on juror misconduct, the defendant must show that the juror withheld material information during voir dire despite the defendant's due diligence. *Id.* at 355–56; *see Armstrong v. State*, 897 S.W.2d 361, 363–64 (Tex. Crim. App. 1995). Diligence requires that counsel ask questions calculated to bring out information that might indicate a juror's inability to be impartial and truthful. *Armstrong*, 897 S.W.2d at 363–64. In the absence of such questions, material information that a juror fails to disclose is not really "withheld." *Id.* at 364. Counsel must ask specific questions, not rely on broad ones, to satisfy this obligation and must ask follow-up questions after a potential bias is discovered. *Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999).

**2. Analysis**

In reviewing the voir dire record, we find no instance where appellant's counsel questioned the venire panel concerning their knowledge of appellant's address. Appellant cannot demonstrate that the juror "withheld" information because appellant's counsel did not ask questions calculated to reveal the information appellant claims indicates impartiality or bias. *See id.* at 917–18 (holding that juror did not "withhold"

information where "defense counsel did not ask any oral questions in an effort to verify whether prospective jurors who returned juror questionnaires had been involved in criminal cases as that question was meant to be understood"). Therefore, there exists no misconduct warranting a reversal. *See id.* The cases cited by appellant are inapposite, because they each involve a juror's failure to disclose material information in response to specific questions posed in voir dire. *See Franklin,* 138 S.W.3d at 352 (after stating that she knew none of the parties involved in trial, juror informed court that she was the assistant leader of victim's Girl Scout troop and that her daughter was also in the victim's troop); *Von January v. State*, 576 S.W.2d 43, 44 (Tex. Crim. App. 1978) (juror failed to disclose that he knew the deceased victim's family although asked directly during voir dire); *Salazar,* 562 S.W.2d at 481–82 (when asked whether he had been a witness in a criminal case, juror failed to disclose that he had been a prosecution witness in a criminal proceeding where he was eyewitness to sexual assault of his daughter).

**C. Summary**

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court's failure to declare a mistrial was not an abuse of discretion. *See Ocon*, 284 S.W.3d at 884. We overrule appellant's first issue.

### III. JURY CHARGE ERROR

By his second issue, appellant argues that the trial court "committed reversible jury charge error." Under two sub-issues, appellant maintains he was entitled to (1) a jury determination of the "applicability of the quarterly verification requirement" and (2) an affirmative defense instruction on mistake of law.

**A. Standard of Review**

Appellate review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we determine whether error occurred, and, if so, we evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731-32. Where a timely objection is made at trial, jury charge error requires reversal if the error was "calculated to injure the rights of defendant," which means there must be "some harm" to the accused. TEX. CODE CRIM. PROC. ANN. art. 36.19; *see also Abdnor*, 871 S.W.2d at 731–32. But when the error is not so preserved, the harm must be "egregious" before reversal is proper. *Id.* An egregious harm is one that goes to the "very basis of the case." *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007).

**B. Quarterly Verification Requirement**

By his first sub-issue, appellant argues that he was "entitled to a jury determination of the applicability of the quarterly verification requirement." Specifically, appellant maintains there was a fact issue regarding whether he was subject to supervision or confinement on September 1, 1999, which impacts whether the 1999 amendments excused him from the quarterly registration requirement. This issue presents a matter of statutory construction.

**1. Applicable Law**

When this court interprets statutes, "we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Reynolds v. State*, 423 S.W.3d 377, 382 (Tex. Crim. App. 2014) (citations omitted). We first look at the language of the

statute to discern the fair, objective meaning of the text at the time of its enactment. *Id.* Where the statute is clear and unambiguous, we give effect to its plain meaning, unless doing so would lead to absurd results that the legislature could not have intended. *Id.* If the statute is ambiguous, we may then look beyond the plain text and consider additional factors. *Id.*

**2. Analysis**

The 1999 amendments to the sex offender registration statute extended the quarterly registration requirement to those persons who have "been convicted two or more times" of a sexually violent offense. Act of Sept. 1, 1999, 76th Leg., ch. 1415, § 15, 1999 Tex. Gen. Laws 4838. The "savings clause" to the 1999 amendments limited the Act's application to those who were confined or under supervision as of September 1, 1999. Act of Sept. 1, 1999, 76th Leg., ch. 1415, § 29, 1999 Tex. Gen. Laws 4842. Appellant argues there was a fact issue concerning whether he was subject to the quarterly registration requirement because there was conflicting evidence regarding appellant's discharge date. However, we conclude the 2001 amendments[4] extended the quarterly registration requirement to appellant, regardless of his discharge date. *See* Act of Sept. 1, 2001, 77th Leg., ch. 211, § 19, 2001 Tex. Gen. Laws 405.

The plain language of the transition clause in the 2001 amendments provides for application of the law to those persons required to register as a sex offender "before, on, or after" September 1, 2001. *Id.* Appellant, who was required to register as a sex

---

[4] The 2001 amendments further clarified that the quarterly registration requirement applies to offenders with two or more qualifying convictions regardless of whether the convictions were entered on different dates or whether the offenses arose out of the same criminal transaction. Act of Sept. 1, 2001, 77th Leg., ch. 211, § 9, 2001 Tex. Gen. Laws 401.

offender before September 1, 2001, is clearly within the class of persons identified by the legislation. The 2005 amendments merely renumbered article 62.06 as 62.058. *See* Act of September 1, 2005, 79th Leg., ch. 1008, art. 1, § 1.01, 2005 Tex. Gen. Laws 3402. Therefore, there is no fact issue concerning the application of article 62.058's quarterly reporting requirement, and the trial court did not err in refusing to submit the issue to the jury. *See Reynolds*, 423 S.W.3d at 382 (interpreting similar language in the 2005 reenactment of Chapter 62, the court of criminal appeals noted "[t]here is no language within the statute that indicates the [earlier] 'savings clause' was to be retained. The plain language of the statute also does not indicate that 'person[s] subject to Chapter 62' means only those individuals who had been subject to it prior to the amendments . . . and we see no reason to read this meaning into it.")

## C. Mistake of Law Instruction

By his second sub-issue, appellant argues that "the changes in the law and resulting confusion established a bona fide 'mistake of law.'" During the charge conference, appellant's counsel requested a mistake of law defense because of appellant's reliance on statements from various agencies "including the probation department from Nueces County [telling appellant] that he was an annual registrant." The trial court denied the request.

### 1. Applicable Law

A defendant is entitled to a mistake of law instruction if the defendant reasonably believed the conduct charged did not constitute a crime, and he acted in reasonable reliance upon:

12

(1) an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

(2) a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

TEX. PENAL. CODE ANN. § 8.03(b). The defendant has the burden of producing sufficient evidence to raise a defensive issue. *Riddle v. State*, 888 S.W.2d 1, 6 (Tex. Crim. App. 1994). The instruction is not required if the evidence viewed in the light most favorable to the defendant does not raise the issue. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

### 2. Analysis

The record reflects appellant may have been notified by law enforcement agencies that he was required to report annually, including upon his release from jail on March 22, 2010. The uncontroverted testimony at trial, however, further reflects that, on the following three occasions appellant reported to CCPD, he was expressly notified by CCPD personnel that he was required to register every ninety days, including June 22, 2010, the last day he reported prior to his arrest. Appellant did not testify at trial; therefore, there is no evidence in the record concerning whether he relied upon prior agency representations.

Viewing the evidence in the light most favorable to appellant, we conclude appellant failed to produce sufficient evidence that he reasonably believed the conduct charged did not constitute a crime. *See* TEX. PENAL. CODE ANN. § 8.03(b); *Riddle*, 888 S.W.2d at 6; *Dyson*, 672 S.W.2d at 463. Further, appellant presented no evidence

13

that he relied on an official statement of the law by an administrative agency charged with the responsibility for interpreting the law. *See id.* The trial court did not err in denying a mistake of law instruction.

**D. Summary**

We conclude the trial court did not commit jury charge error; therefore, we need not determine whether sufficient harm resulted requiring reversal. *See Abdnor*, 871 S.W. 2d at 731. We overrule appellant's second issue.

## IV. EX POST FACTO PROHIBITION

By his third issue, appellant argues the retroactive application of the quarterly verification requirement violates the ex post facto prohibition of the state and federal constitutions. Specifically, appellant maintains "the quarterly verification requirement . . . increas[es] the punishment for his prior [indecency with a child] convictions." We disagree.

**A. Standard of Review and Applicable Law**

We review the constitutionality of a criminal statute de novo, as a question of law. *Moloney v. State*, 294 S.W.3d 613, 626 (Tex. App.–Houston [1st Dist.] 2009, pet. ref'd). We presume the statute is valid and the legislature did not act unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The party challenging the statute has the burden to establish its unconstitutionality. *Id.* We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979).

Both the United States and Texas Constitutions prohibit Texas from applying any ex post facto law. U.S. CONST. art. I, § 10, cl. 1; TEX. CONST. art. I, § 16. Texas interprets the proscription against ex post facto laws in the Texas Constitution to have the same meaning as the proscription against ex post facto laws found in the United States Constitution. *Grimes v. State*, 807 S.W.2d 582, 586 (Tex. Crim. App. 1991); *Young v. State*, 358 S.W.3d 790, 805 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). "An ex post facto law: (1) punishes as a crime an act previously committed which was innocent when done; (2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed; or (3) deprives a person charged with a crime on any defense available at the time the act was committed." *Rodriguez*, 93 S.W.3d at 66 (citing *Collins v. Youngblood*, 497 U.S. 37, 42–44 (1990)).

We apply the "intent-effects" test to determine whether the application of a statute constitutes punishment. *Id.* at 67. A court must first determine whether the legislature intended the statute to impose a criminal punishment. *Id.* (citing *Hudson v. United States*, 522 U.S. 93, 99 (1997)). If it is the legislature's intent to establish a civil remedy, we look to the factors articulated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), to determine whether the effects of a statute are criminally punitive. *Id.* at 67–68. Under *Kennedy*, we consider whether the regulation: (1) involves an affirmative disability or restraint; (2) has been traditionally regarded as punishment; (3) applies only on a finding of scienter; (4) promotes the traditional aims of punishment; (5) applies to behavior that is already a crime; (6) has a rational connection to a non-punitive purpose; and (7) appears excessive in relation to this purpose. 372 U.S. at 168–69.

**B. Analysis**

The State does not contest the retroactive application of the quarterly registration requirement, and appellant does not argue that the legislature intended for the requirement to be criminal punishment. Therefore, we must determine whether the effects of the statute are criminally punitive.

The court of criminal appeals has held on two occasions that the sex offender registration statute is non-punitive in effect. *See Rodriguez*, 93 S.W.3d at 79; *Ex Parte Robinson*, 116 S.W.3d 794, 798 (Tex. Crim. App. 2003). However, those cases did not involve the application of the quarterly registration requirement.

In *Rodriguez,* the court thoroughly analyzed the annual reporting requirement of the 1997 amendments to the sex offender registration statute utilizing the seven *Kennedy* factors and concluded that the statute was non-punitive. 93 S.W.3d at 69–79. The court reviewed the frequency of the in-person reporting requirements and public notification provisions in relation to whether the statute was an "affirmative disability or restraint," and concluded that "although registration and notification impose a burden upon those required to register, it does not impose an affirmative disability or restraint as the term is commonly understood." *Id.* at 71.

In *Ex Parte Robinson*, the defendant argued that the registration requirements constituted cruel and unusual punishment. 116 S.W.3d at 797. Relying on its decision in *Rodriguez*, the court of criminal appeals concluded the 1999 version of the statute was non-punitive, and, therefore, did not constitute cruel and unusual punishment. *Id.* at 798.

In *Smith v. Doe*, the United States Supreme Court considered for the first time whether a sex offender registration law violated the ex post facto clause of the federal constitution. 538 U.S. 84, 92 (2003). Applying the *Kennedy* factors, the Court reviewed the Alaska sex offender registration statute which, like the Texas statute, required an offender who was convicted two or more times to verify information quarterly (although not in person). *Id*. at 97–105. In analyzing whether the reporting requirements constituted an "affirmative disability or restraint," the Court rejected the argument that the registration system is parallel to probation or supervised release. *Id*. at 101. The Court explained:

> [O]ffenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision. Although registrants must inform the authorities after they change their facial features . . . borrow a car, or seek psychiatric treatment, they are not required to seek permission to do so. A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense . . . It suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause.

*Id.* at 101–02. The Court concluded that "[t]he Act is non-punitive, and its retroactive application does not violate the *Ex Post Facto* Clause." *Id*. at 105–06.

The only difference between the statute before the court of criminal appeals in *Reynolds* and the statute as applied to appellant is the frequency of the reporting requirement—quarterly vs. annually. However, like the Alaska statute, an individual subject to quarterly registration in Texas may choose where to live and work without supervision. *Id*. at 101–02. We conclude that the quarterly reporting requirement does not constitute an "affirmative disability or restraint," and, in light of Texas precedent, we

conclude that the sex offender registration statute is non-punitive in effect. *See Rodriguez*, 93 S.W.3d at 79; *Ex Parte Robinson*, 116 S.W.3d at 798. As a result, the retroactive application of the quarterly reporting requirement does not violate the ex post facto clause of the state and federal constitutions. We overrule appellant's third issue.

## V. PLEA PROCEEDINGS

By issues four through seven, appellant alleges error concerning the original plea proceedings in trial cause numbers 09-CR-1006-G and 09-CR-1082-G. Specifically, appellant argues: (1) his conviction for theft is not supported by the evidence; (2) his conviction of theft and unauthorized use of a motor vehicle violates the double jeopardy clause of the federal constitution; (3) his sentences in trial cause number 09-CR-1082-G are void because they were improperly enhanced; and (4) his convictions for three counts of violating the registration requirements is not supported by sufficient evidence and constitutes double jeopardy. We conclude appellant has waived these issues, but we will review the judgments to determine whether they are void or a double jeopardy violation is clearly apparent from the face of the record.

### A. Waiver

A defendant must raise issues relating to the original plea proceeding, including evidentiary sufficiency, only in a timely appeal taken when deferred-adjudication community supervision is first imposed. *Perez v. State*, 424 S.W.3d 81, 86 (Tex. Crim. App. 2014); *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999); *see also Wiley v. State*, 410 S.W.3d 313, 319 (Tex. Crim. App. 2013) ("An appellant will not be permitted to raise on appeal from the revocation of his community supervision any claim

that he could have brought on an appeal from the original imposition of that community supervision."). There are two limited exceptions to the general rule that the original plea cannot be attacked on an appeal of the revocation proceedings: the "void judgment" exception; and the "habeas corpus" exception. *See Nix v. State*, 65 S.W.3d 664, 667 (Tex. Crim. App. 2001).

Further, a "defendant in a criminal prosecution for any offense may waive any rights secured him by law." TEX. CODE CRIM. PROC. ANN. art. 1.14. "A waiver of the right to appeal made voluntarily, knowingly, and intelligently will prevent a defendant from appealing without the consent of the trial court." *Ex parte Broadway*, 301 S.W.3d 694, 697 (Tex. Crim. App. 2009).

## B. Sufficiency Challenge

Appellant was required to raise the issue of sufficiency of the evidence supporting his plea in a timely appeal following the original plea proceedings. *See Perez,* 424 S.W.3d at 86. Because appellant failed to do so, our inquiry is limited to determining whether the judgments are void because of a complete lack of evidence to support the conviction. *See Nix*, 65 S.W.3d. at 668 ("For the judgment to be void, the record must show a complete lack of evidence to support the conviction, not merely insufficient evidence."). Appellant's guilty pleas in trial cause numbers 09-CR-1006-G and 09-CR-1082-G were accompanied by a judicial confession covering all of the elements of the charged offenses. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15. This evidence is sufficient to support the convictions. *See Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009) ("[S]o long as such a judicial confession covers all of the

elements of the charged offense, it will suffice to support the guilty plea."). Therefore the original judgments are not void.

We also observe that appellant specifically waived his right to appeal in trial cause numbers 09-CR-1006-G and 09-CR-1082-G. In both causes, appellant signed a written waiver of his right to appeal. Appellant also signed acknowledgments of receipt of a copy of the "Trial Court's Certification of Defendant's Right of Appeal," which noted that this "is a plea-bargain case, and the defendant has NO right of appeal." (emphasis in original). Appellant does not challenge whether his waiver was made voluntarily, knowingly, and intelligently. Therefore, appellant may not now raise issues concerning the original judgments.

## C. Double Jeopardy

Appellant raises his double jeopardy challenge for the first time on appeal. In general, a defendant must preserve a double jeopardy objection at or before the time the issue of his guilt is submitted to the finder of fact. *See Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000); *King v. State*, 161 S.W.3d 264, 267 (Tex. App.— Texarkana 2005, pet. ref'd). A defendant is excused from the preservation requirement only when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest. *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).

The protection against double jeopardy includes the protection against multiple punishments. *Ex parte Benson*, 459 S.W.3d 67, 71 (Tex. Crim. App. 2015). "In the multiple-punishment context, the double-jeopardy clause prevents a court from

prescribing greater punishment than the legislature intended." *Id.* "Where two distinct statutory provisions are at issue, the offenses must be considered the same under both an 'elements' analysis and a 'units' analysis for a double-jeopardy violation to occur." *Id.* Under the elements analysis, the question is "'whether each provision requires proof of a fact which the other does not.'" *Id.* at 72 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Under Texas law, the same-elements test is governed by the cognate-pleadings approach which requires "comparing the elements of the greater offense as pleaded to the statutory elements of the lesser offense." *Id.* If the two offenses have different elements, "the judicial presumption is that the offenses are different for double-jeopardy purposes and that cumulative punishment may be imposed." *Id.* This presumption is rebutted by a showing that the legislature clearly intended only one punishment. *Id.* (citing *Ex Parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999) (setting out non-exclusive list of factors to consider in determining whether legislature intended only one punishment)).

The elements analysis is a legal question and does not depend on evidence offered at trial. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). If the elements are legally the same, we must then review whether they are factually the same by determining the allowable unit of prosecution. *Ex Parte Benson*, 459 S.W.3d at 73–74. The allowable unit of prosecution of an offense turns on statutory construction and usually requires ascertaining the gravamen of the offense. *Id.*

**1. Theft and Unauthorized Use of a Motor Vehicle**

Appellant argues that a double jeopardy violation is clearly apparent on the face of the record, because he was sentenced for the same act for Theft and Unauthorized Use of a Motor Vehicle. We disagree.

Because appellant was sentenced under two distinct statutory provisions, we must first determine whether the offenses have the same elements using the cognate-pleadings approach. *Ex Parte Benson*, 459 S.W.3d at 72. The theft indictment alleged that appellant unlawfully appropriated a boat by acquiring or otherwise exercising control over the boat without the effective consent of the owner and with the intent to deprive the owner of the property. *See* TEX. PENAL CODE ANN. § 31.03. A person commits the lesser offense of unauthorized use of a motor vehicle if "he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner." *See* TEX. PENAL CODE ANN. § 31.07.

Theft requires an appropriation of some property, while the latter offense requires the operation of a motor vehicle. Therefore, each offense requires proof of a fact which the other does not. *Id.* at 73. For instance, a defendant might steal a boat or automobile by having it towed, without ever operating the motor vehicle. On the other hand, one could operate a motor vehicle without the consent of the owner, and later return it, without having committed theft. *See State v. Houth*, 845 S.W.2d 853, 869 (Tex. Crim. App. 1992) (Benavides, J., concurring) (explaining that "crimes of Theft and Unauthorized Use of a Motor Vehicle are different inasmuch as the former requires an appropriation of some property, not necessarily a vehicle, while the latter specifically requires operation of a motor vehicle"); *see also Brady v. State*, 14-98-00424-CR, 2001

WL 459719, at *3 (Tex. App.—Houston [14th Dist.] May 3, 2001, pet. dism'd) (mem. op.) ("The gravamen of unauthorized use is operating someone else's vehicle without consent, regardless of intent to deprive. In contrast, the gravamen of theft is intent to deprive, regardless of whether the vehicle is operated.")

Unauthorized use of a motor vehicle might be legally the same under the cognate-pleadings approach if the pleadings indicate that the manner of the motor vehicle's appropriation includes its operation. *See Ex Parte Jefferson*, 681 S.W.2d 33, 34 (Tex. Crim. App. 1984) (holding conviction of theft and unauthorized use of a motor vehicle constituted double jeopardy violation where defendant stole a truck and was later arrested for driving the same truck). However, the indictments in this case do not indicate the manner of appellant's appropriation of the boat. Because the offenses have different elements under the cognate-pleadings approach, a double jeopardy violation is not clearly apparent on the face of the record. *See Ex Parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013) ("A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim.").

**2. Sex Offender Registration Requirements**

Appellant argues that his convictions for three counts of violating the registration requirements constitutes a double jeopardy violation.

In trial cause number 09-CR-1006-G, appellant was indicted for three counts of failure to comply with sex offender registration requirements. Specifically, appellant was charged with: (1) failing to report in person his anticipated moving date or change of address in the registration form; (2) failing to report a change of employment or a

change of address in person and verify registration information; and (3) failing to report a change of employment, job status, or a change of work location within a seven day period after the date of the change.

Each of the counts in the indictment constitute separate violations of Chapter 62 of the Texas Code of Criminal Procedure. A person required to register must: report an anticipated change of address, TEX. CODE OF CRIM. PROC. art. 62.055(a); report within seven days after the move, *id.*; and report a change in job status within seven days, *id.* at art. 62.057. Because the offenses do not involve the same elements, we conclude the record does not clearly reflect a double jeopardy violation. Further, we note that the legislature has clearly expressed its intent that each violation be punished separately. *See id.* 62.102(a) ("[A] person commits an offense if the person is required to register and fails to comply with any requirement under this chapter.").

**D. Sentence Improperly Enhanced**

Appellant argues that his sentences in trial cause number 09-CR-1082-G were improperly enhanced using his prior convictions for indecency with a child and failure to comply with registration requirements, because the conviction of the former was an element of the latter conviction.

A sentence outside the prescribed punishment range is void. *Baker v. State*, 278 S.W.3d 923, 926 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). A defect which renders a sentence void may be raised at any time. *Ex parte Beck*, 922 S.W.2d 181,

182 (Tex. Crim. App. 1996). "The use of a prior conviction to prove an essential element of an offense bars the subsequent use of that prior conviction in the same indictment for enhancement purposes." *Musgrove v. State*, 425 S.W.3d 601, 614 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Wisdom v. State*, 708 S.W.2d 840, 845 (Tex. Crim. App.1986)). This would prohibit the use of appellant's indecency conviction both as an element of failure to register and as a punishment enhancement for the same offense. However, this is not what occurred.

While the indecency conviction was an element of appellant's first conviction for failure to register, neither conviction was an element of the offenses of theft and unauthorized use of a motor vehicle. Therefore, appellant's sentences were not improperly enhanced. *See Steels v. State*, 858 S.W.2d 636, 638 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (holding it was permissible for conviction used for enhancement to have been an element of another conviction used for that purpose).

**E. Summary**

We conclude that appellant waived issues four through seven by not timely appealing from the judgments imposing community supervision-deferred adjudication, and that he has voluntarily, knowingly, and intelligently waived his right to appeal the judgments. The judgments are not void, and a double jeopardy violation is not clearly apparent on the face of the record. We overrule issues four through seven.

## VI. CONCLUSION

We affirm the trial court's judgment in each cause.

GREGORY T. PERKES
Justice

Dissenting Memorandum Opinion
by Justice Gina M. Benavides.

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
24th day of September, 2015.

**NUMBERS 13-11-00785-CR, 13-11-00786-CR and 13-113-00791-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**MICKEY BOSWELL, Appellant,**

**v.**

**THE STATE OF TEXAS, Appellee.**

**On appeal from the 319th District Court
of Nueces County, Texas.**

# DISSENTING MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Longoria
Dissenting Memorandum Opinion by Justice Benavides**

I respectfully dissent regarding the majority's holding on issue one because I feel

a mistrial was warranted in this situation.

## I. THE RECORD

The appellant, Mickey Boswell, was tried by a jury for failure to comply with this

state's sex offender registration requirements. *See* TEX. CODE CRIM. PROC. ANN. art. 62.055, 62.057 (West, Westlaw through 2015 R.S.). After the jury retired to deliberate, one of the jurors apparently commented during deliberations that one of the addresses used by Boswell to satisfy the registration requirements was a commercial address that belonged to this particular juror. In light of this discovery during deliberations, the jury sent the following note to the trial court requesting guidance:

> One jury member owns property that Mr. Boswell gave as his address. It is a commercial property. *This jury* says it represents dishonesty on Mr. Boswell's part. Are we to allow or dismiss this comment?" (emphasis added).

The appellant moved for a mistrial, which the trial court denied. Instead, the court sent back a note that said, "Do not consider anything not in evidence. Refer to paragraph 10, subpart 4 [of the jury charge]." Boswell now argues on appeal that the jury's note established new evidence received by the jury, the juror who purportedly owned the property in question became an unsworn witness against him, and no instruction could cure the error.

## II. DISCUSSION

### A. Standard of Review and Applicable Law

I agree with the majority that the proper standard of review for the denial of a motion for mistrial is an abuse of discretion. A mistrial is a severe remedy, and "[o]nly in extreme circumstances, where the prejudice is incurable, will mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc). In determining "whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent

2

the prejudicial event." *Crayton v. State*, 463 S.W.3d 531, 535 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Normally, an instruction to disregard will cure error, unless it "was of such a damning character as to suggest it would be impossible to remove the harmful impression from the juror's minds." *Id.*; *see Hawkins*, 135 S.W.3d at 77. A "mistrial should be granted 'only when residual prejudice remains' after less drastic measures are explored." *Ocon*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim App. 2006)). "Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic remedy." *Id.* at 885. However, in deciding a motion for mistrial, a trial court basically "conduct[s] an appellate function: determining whether improper conduct is so harmful that the case must be redone." *Hawkins*, 135 S.W.3d at 77.

## B. Analysis

I would hold that the substance of the jury's note in this case indicates an extreme circumstance in which prejudice cannot be cured. The defendant:

> must be granted a new trial, or a new trial for punishment, for any of the following reasons:. . .
>
> (f) when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case;. . .
>
> (g) when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial.

TEX. R. APP. P. 21.3 (f), (g). "A juror must make a decision at the guilt and punishment

3

phases using information obtained in the courtroom: the law, the evidence, and the trial court's mandates." *Ocon*, 284 S.W.3d at 884; *see Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim. App. 2002). In older cases, in order for a defendant to be entitled to a new trial, a two-prong test was necessary to be satisfied. *Bustamante v. State*, 106 S.W. 3d 738, 743 (Tex. Crim. App. 2003). The test required the defendant to show: "(1) the evidence must have been received by the jury, and (2) the evidence must be detrimental or adverse to the defendant." *Id*. Even though the two-prong test refers to a motion for new trial, the Court of Criminal Appeals was inclined to adopt and use the same two-prong test in evaluating Bustamante's motion for mistrial. *Id*. (holding that if evidence evaluated under two-prong standard and instruction to disregard would have cured error, then the test was applicable to both motion to new trial and motion for mistrial).

Although *Bustamante* lends itself to supporting this dissent, the facts and ultimate disposition in *Bustamante* are distinguishable from this case. *Id*. at 745. In *Bustamante*, the jury had received an exhibit in the jury room that was not submitted into evidence at trial and one juror read it out loud to the entire jury. *Id*. The jury sent a note out to the trial court regarding the exhibit. The trial court brought each juror out and questioned them individually. *Id*. Some jurors had heard the evidence read aloud, but all agreed that it would not affect their opinion of the case. *Id*. After all twelve jurors agreed they could disregard the evidence and it would not affect their deliberations, the trial court admonished them again as a whole. *Id*. However, in this case, that did not happen.

The jury note in this case showed plainly that the jury had considered the new

evidence and made a determination regarding Boswell's truthfulness. Boswell did not testify during the trial. In essence, the juror who purportedly owned the address of the property Boswell reportedly used became an unsworn witness against him. In doing so, this juror made a direct comment on Boswell's credibility without Boswell having the right to confront this witness. The plain language of the note further confirms that this "new evidence" adversely affected Boswell's credibility before the entire jury because the note states that it found Boswell dishonest. Thus, because the jury discussed this new, unverified information and made their own determination regarding its weight before requesting guidance from the trial court, there was no possible way to cure the taint of the jury with an instruction to disregard. It seems highly unlikely that the taint would have been dissipated even if the jury had been individually questioned. However, without the jury being individually questioned, there is no way to know that this information did not influence their decision. Boswell is entitled to a "fair and impartial jury" without the influence of outside information. *See* TEX. R. APP. 21.3 (f), (g). The jury note at issue is a clear indication that this jury was influenced by the information provided to them outside the courtroom.

Additionally, the majority holds that because Boswell's defense counsel did not request a lesser remedy, then the trial court did not abuse its discretion in denying the motion for mistrial. The following exchange occurred:

| Court: | Jury note number two says, "One member owns property that Mr. Boswell gave as his address. It is a commercial property. This jur[y] says it represents dishonesty on Mr. Boswell's part. Are we to allow or dismiss this comment? |
| | |
| | What says the prosecutor? |

5

| | |
|---|---|
| State: | I guess the language, Your Honor, that's—reiterate the language in the charge you're not to refer to any outside—anything outside of what was presented in Court. Other than that, I don't know how to fix it. |
| Defense Counsel #1: | I'm going to make a motion for mistrial. |
| Defense Counsel #2: | They were already given that instruction. |

The lesser remedy in this case was the trial court's response to the jury following the note in question. However, I conclude that the lesser remedy was insufficient. It was clear from the language of the jury note that bias had already occurred, and that the jury found Boswell dishonest. As a result, the trial court's only option at this point would have been to declare a mistrial. Boswell did not have the opportunity to confront the unsworn juror witness and did not have a fair and impartial jury deliberating his guilt or innocence because this juror injected new and unverified evidence that adversely affected Boswell's case. This is clearly incurable prejudice, and as a result, I would hold that the trial court abused its discretion in this case and no lesser remedy could have cured the taint.

### III. CONCLUSION

I would reverse the trial court's denial of Boswell's motion for mistrial and would remand the case for a new trial.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
24th day of September, 2015.

6

JURY NOTE 2

One jury member owns property that Mr. Boswell gave as his address. It is a commercial property. This jury says it represents dishonesty on Mr. Boswell's part.
Are we to allow or dismiss this comment?

ANSWER

Do NOT CONSIDER Anything not in evidence. Refer to paragraph 10, subpart 4.

Thomas Greenwell

FILED

SEP 27 2011

PATSY PEREZ, CLERK
DISTRICT COURTS NUECES COUNTY, TEXAS
_____ DEPUTY

Thomas F. Greenwell
Judge Presiding

Agnes L Flore
9/27/11

4